**PEACHTREE LANE ASSOCIATES, LTD., A Texas Limited Partnership, Plaintiff,**

v.

**Harry GRANADER, Alan Granader, and Daniel Granader, Defendants.**

No. 94 C 5588.
Adv. No. 94 A 1468.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 18, 1994.

William J. Campbell, Leroy G. Inskeep, J. Douglas Baldridge, Mark P. Naughton, Rudnick & Wolfe, Chicago, IL, for debtor-plaintiff.

Jeffrey Wayne Finke, Thomas E. Raleigh, Drew Michael Dillworth, Raleigh and Helms, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Peachtree Lane Associates, Ltd. ("Peachtree" or "debtor"), a chapter 11 debtor-in-possession, filed an adversary action (subsequently amended) against Harry, Alan, and Daniel Granader (collectively "defendants") seeking a declaratory judgment determining the parties' rights under a grant of easement and seeking injunctive relief against the defendants, *inter alia,* enjoining them from encroaching upon the debtor's property. Subsequently, the defendants filed an answer to the amended complaint as well as a six-count "conditional" counterclaim [1] and a "condition-

---

1. Because the court finds the qualification "conditional" to be without legal significance, we shall refer to defendants' counterclaim simply as the counterclaim.

al" third-party complaint.[2] The defendants' motion for withdrawal of reference of the adversary action, pursuant to 28 U.S.C. 157(d), is presently before the court.

### BACKGROUND

Peachtree filed a voluntary petition for relief under chapter 11 of the bankruptcy code on July 26, 1994. Peachtree's sole asset is an apartment complex in Webster, Harris County, Texas. Allegedly, the sole means of ingress and egress to the apartment complex is an access road.

On August 31, 1994, Peachtree brought an adversary proceeding against defendants. Defendants, who own a shopping center adjacent to Peachtree's apartments, are the beneficiaries of a grant of easement—executed by and between Peachtree's predecessors and defendants' predecessors—under which defendants have a non-exclusive private easement for ingress and egress for pedestrian and vehicular traffic along the access road.

The exact scope of the grant of easement is the subject of dispute in the adversary action. Peachtree contends that defendants' shopping center's parking lot includes parking slots and protrusions from landscaped islands that wrongfully encroach upon the access road. Peachtree further contends that defendants' allegedly wrongful encroachment exceeds the grant of easement and constitutes an unauthorized entry and trespass upon Peachtree's access road. Moreover, Peachtree contends that defendants' unauthorized entry and trespass obstructs Peachtree's possession and ownership of the access road and precludes Peachtree from delivering free and unencumbered title to the property to prospective purchasers.[3] Consequently, Peachtree filed the underlying adversary action seeking a declaratory judgment regarding the parties' respective rights under the grant of easement and seeking to enjoin defendants from future encroachments. In response, on September 12, 1994, defendants filed their six-count counterclaim. The counterclaim seeks a judgment of actual damages, punitive damages, and attorney's fees for slander of title (count I), commercial disparagement (count V), and tortious interference with prospective economic advantage (count VI), and it seeks actual damages and attorney's fees for breach of easement (count II), unjust enrichment (count III), and violation of the Texas Deceptive Trade Practices—Consumer Protection Act (IV). Defendants made a timely demand for a jury trial on the adversary complaint as well as the counterclaims.

After filing their counterclaim, and after filing the instant motion for withdrawal of reference, defendants moved in the bankruptcy court for an enlargement of time with respect to the bar date. On October 25, 1994, the bankruptcy court issued a minute order, *inter alia*, granting defendants' motion for enlargement of time "allowing defendants to and including September 12, 1994 to file their conditional counterclaim." Although it is not explicit from the face of the bankruptcy court's minute order, it appears, and the court concludes, that the intent and effect of the bankruptcy court's order was to

---

**2.** By a letter dated November 15, 1994, Peachtree's counsel advised the court that, "Defendants' counsel advised Bankruptcy Judge Barliant that Defendants had reached a settlement with Third–Party Defendant, Willmax–Apollo Northridge Apartments, L.P., and that the third party action would soon be dismissed." Defendants' counsel was copied on the letter. Because defendants' counsel has not objected to this statement or informed the court otherwise, the court shall consider for purposes of deciding the motion at hand that the third-party complaint has been dismissed or is pending dismissal. Accordingly, this opinion will not discuss the third-party complaint any further and arguments made by either party that are predicated on the existence of the third-party complaint will be disregarded as moot. In particular, defendants' argument that withdrawal of the reference must be granted

in order to effect joinder of the prospective purchaser is rendered moot.

**3.** At the time that the adversary action was filed, Peachtree had entered into and executed an Agreement to Purchase and Sell Apartment Property ("the Purchase Agreement") with Willmax–Apollo Northridge Apartments ("Willmax–Apollo"). The Purchase Agreement expressly required Peachtree to deliver free and unencumbered title to the apartment complex and access road before the scheduled closing date. However, perhaps because of Peachtree's inability to resolve the instant easement dispute, it now appears that Willmax–Apollo has walked away from the agreement. *See* Tr. of Nov. 14, 1994 Proceedings before Bankr.Ct. at 3.

permit the counterclaim to stand as a proof of claim against the estate in the bankruptcy proceedings.[4]

Based on their claim of entitlement to a jury trial, defendants now move this court to withdraw the reference of the adversary proceeding from the bankruptcy court. For the reasons set forth below, defendants' motion for withdrawal of the reference is denied.

### ANALYSIS

■■■ A district court may withdraw a reference if "cause" exists. 28 U.S.C. § 157(d).[5] Because the bankruptcy court may not conduct a jury trial, " 'cause' to withdraw the reference automatically exists in cases where the party seeking withdrawal is entitled to a jury trial under the Seventh Amendment." *In re Americana Expressways, Inc.,* 161 B.R. 707, 709 (D.C.Utah 1993); *see also In re Grabill Corp.,* 967 F.2d 1152, 1158 (7th Cir.1992) (holding that bankruptcy judges are not authorized to conduct jury trials and that where such a trial is required, it must be held in the district court). Defendants' motion for withdrawal of the reference turns on whether they are entitled to a jury trial. Because the court finds that the instant case is controlled by *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) *(per curiam )*, we hold that defendants are not entitled to a jury trial on their counterclaims.

In *Langenkamp,* a chapter 11 trustee instituted adversary proceedings against creditors to recover certain avoidable preferences. Some of the creditors had previously filed proofs of claim against the bankruptcy estate whereas others had not. After a bench trial, the bankruptcy court held for the trustee and the district court affirmed. The Tenth Circuit reversed on the issue of the creditors' entitlement to a jury trial on the preference

claims. 498 U.S. at 43–44, 111 S.Ct. at 330–31.

The Supreme Court agreed with the Tenth Circuit's holding that " 'those appellants that did not have or file claims against the debtors' estates undoubtedly [were] entitled to a jury trial on the issue whether the payments they received from the debtors ... constitute[d] avoidable preferences.' " 498 U.S. at 44, 111 S.Ct. at 331. However, the Court found that the Tenth Circuit erred in holding that creditors who had filed claims against the estate were entitled to a jury trial. *Id.* The court reasoned:

> In *Granfinanciera[, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) ], we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S., at 58–59, and n. 14, 109 S.Ct. at 2799–2800, and n. 14 (citing *Katchen [v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966) ] at 336). If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. *Ibid.* In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction. Granfinanciera, supra,* 492 U.S. at 57–58, 109 S.Ct. at 2798–99. As such, there is no Seventh Amendment right to a jury trial.

*Langenkamp,* 498 U.S. at 44–45, 111 S.Ct. at 331–32. Concluding that " 'a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the

---

**4.** This conclusion is supported by the fact that during a hearing before the bankruptcy judge on October 31, 1994, the Bankruptcy judge remarked, "The defendants are seeking satisfaction of claims from the assets of the estate. They filed a counterclaim which now stands as a proof of claim in this case." Tr. at 26.

**5.** Section 157(d) provides:
The district court may withdraw, in whole or in part, any case or proceeding referred under

this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.
28 U.S.C. § 157(d).

creditor has submitted a claim against the estate,'" *id.* at 45, 111 S.Ct. at 332 (quoting *Granfinanciera*, 492 U.S. at 58, 111 S.Ct. at 2798), the Court held that respondents had brought themselves within the equitable jurisdiction of the bankruptcy court by filing claims against the bankruptcy estate; consequently, they were not entitled to a jury trial. *Id.*

Under *Katchen, Granfinanciera,* and now *Langenkamp,* it is clear that a creditor who files a claim in the bankruptcy court against the bankruptcy estate "places his dispute with the debtor into the arena of public rights," *In re Hudson,* 170 B.R. 868 (E.D.N.C.1994), and loses its Seventh Amendment right to a jury trial. By moving successfully for an extension of the bar date so that the bankruptcy court might treat their counterclaim as a proof of claim against the estate, defendants have brought themselves squarely within this rule. Since they have now effectively filed a claim against the bankruptcy estate, defendants have lost their right to a jury trial.

The court's ruling need not rest, however, on the fact that defendants succeeded in their efforts to extend the bar date so as to encompass their counterclaims. Several well reasoned, post-*Langenkamp* opinions have held that the filing of a counterclaim in an adversary proceeding instituted by a chapter 11 trustee or debtor-in-possession qualifies as filing a "claim" thereby triggering the "public rights" process of allowance and disallowance of claims and the restructuring of the debtor-creditor relationship. *See, e.g., In re Hudson,* 170 B.R. 868, 874 (E.D.N.C.1994) (noting that "convincing authority has held that a counterclaim does qualify as a 'claim' for purposes of the ... *Granfinanciera* and *Langenkamp* private rights jury trial analysis" and holding that "the defendant's filing of a counterclaim caused the defendant to lose its Seventh Amendment right to a jury trial"); *In re Americana Expressways, Inc.,* 161 B.R. 707, 714 (D.C.Utah 1993) ("By presenting a [defense which, in reality, presents a counterclaim against the estate], Defendant has submitted to the bankruptcy court's equity jurisdiction and is not entitled to a jury trial.");

*In re Lloyd Securities, Inc.,* 156 B.R. 750, 755 (E.D.Penn.Bankr.1993) (finding that "a mere attempt to invoke this court's equitable 'claims resolution' process through assertion of a non-compulsory counterclaim ... is a sufficient act on the part of a creditor to eliminate its right to a jury trial, because no such right exists in that process"); *In re Allied Cos., Inc.,* 137 B.R. 919, 924 (S.D.Ind. 1991) (finding that "a counterclaim is within the type of claims which eliminate the necessity for a jury trial under *Granfinanciera* and *Langenkamp*" and that the adversary defendant's "counterclaim ... does implicate the[ ] equitable powers of the bankruptcy court"); *Bayless v. Crabtree,* 108 B.R. 299 (W.D.Okla.1989) (pre-*Langenkamp* ) (finding that adversary defendants "consented to the equitable jurisdiction of the Bankruptcy Judge by filing their counterclaim"), *aff'd,* 930 F.2d 32 (10th Cir.1991); *see also In re Glen Eagle Square, Inc.,* 132 B.R. 106 (E.D.Pa.1991).

Significantly, in *Allied Companies,* the court explicitly addressed and rejected the argument that the foregoing principle—*viz.,* that asserting a counterclaim in an adversary action subjects the adversary defendant to the equity jurisdiction of the bankruptcy court thereby abandoning the defendant's right to a jury trial—is inapplicable in the context of a compulsory counterclaim. The *Allied Companies* court reasoned that the justification for the loss of right to a jury trial lies not in a waiver or consent theory "but rather in the fact that the bankruptcy court has possession of the estate and must invoke its equitable power in the process of allowing and disallowing claims." 137 B.R. at 925 (citing *Granfinanciera* ). Accordingly, the court concluded that "the mandatory nature of [the adversary defendant's] counterclaim is not dispositive and does not serve as a basis for distinguishing [permissive counterclaim cases]." *Id.* Similarly, in *Hudson,* the court rejected the defendant's argument that the filing of a counterclaim should not operate as a waiver of its right to a jury trial because the counterclaim was compulsory. 170 B.R. at 874. As in *Allied Companies,* the *Hudson* court reasoned that the "waiver rationale" was inapposite:

The Supreme Court in *Granfinanciera* specifically disclaimed the idea that a waiver rational explained why those who filed claims lost any entitlement to a jury trial. . . . Instead, the Court made clear that *Granfinanciera* was based on the bankruptcy court's possession of a disputed *res* to which the creditor laid claim.

170 B.R. at 874. The court concluded:

the defendant did not lose its right to a jury trial by filing a counterclaim and thereby waiving the right. Instead, the defendant lost its right to a jury trial by filing a counterclaim and thereby seeking a piece of the disputed *res*, the debtors' estate, which was subject to the bankruptcy court's equitable power to allow and disallow claims. Regardless of whether the counterclaim was permissive or compulsory, it represented the defendant's attempt to obtain a portion of the debtors' estate.

*Id.* at 875.[6] We concur in the foregoing reasoning and conclude that the fact that defendants' counterclaims may be compulsory[7] is not determinative with respect to their right to a jury trial.

This court believes that the foregoing rationale also disposes of one of the defendants'

final arguments—namely, that all of the foregoing cases are inapposite because they involve pre-petition counterclaims whereas their counterclaims include some post-petition claims. (*e.g.*, slander of title, commercial disparagement, tortious interference with economic advantage, etc.).[8] Regardless of whether the counterclaims are pre- or post-petition, they are still claims against the debtor's estate and hence seek a piece of the *res* which is under the equitable jurisdiction of the bankruptcy court. It is precisely this circumstance—*viz.* seeking a piece of the bankruptcy estate—that has been determinative in the opinions cited above. The court can find no legal significance in the fact that the piece of the pie that defendants seek to carve out of the estate stems from post-petition conduct by the debtor. Resolution of post-petition claims as with many—albeit not all—other administrative expenses are as much a function of the bankruptcy court's equitable apportionment of the estate as resolution of pre-petition claims. Accordingly, we find that we can properly apply *Langenkamp* notwithstanding the fact that some of defendants' counterclaims are post-petition.[9]

For all of the foregoing reasons, the court finds that defendants are not entitled to a

**6.** The court also found the adversary defendant's attempt at distinguishing *Langenkamp*—namely, that in *Langenkamp* the defendant seeking a jury trial filed a proof of claim with the bankruptcy court *before* the trustee initiated its action whereas the *Hudson* defendant had not filed any claim before the trustee filed his complaint—to be without legal significance. 170 B.R. at 875. Quoting *In re Americana Expressways* with approval, the court stated, "'the Supreme Court's focus in *Langenkamp* was not on the procedural posture [of] the trustee's action . . ., but on the creditor's submission to the bankruptcy court's equity jurisdiction. In that regard, it is the fact of the [defendant's] claim against the estate that is important, not the procedural posture of the trustee's action or the timing of the [defendant's] claim.'" *Id.* (quoting *Americana Expressways*, 161 B.R. at 712 n. 9). Accordingly, the court found that it could properly apply *Granfinanciera* and *Langenkamp* even though the defendant did not file any claim with the bankruptcy court before the trustee filed his complaint. 170 B.R. at 875. *Id.* We concur with the reasoning of *Hudson* and similarly consider inconsequential the fact that the adversary defendants in the case at bar had not filed any claims prior to the trustee's action.

**7.** While we make no judgment as to whether the counterclaims were in fact compulsory, we note that insofar as some of the counterclaims are plainly pre-petition they are not compulsory under Bankruptcy Rule 7013. Further, the post-petition counterclaims would be compulsory under Rule 7013 only if they arose out of the transaction or occurrence that is the subject matter of the debtor's claim. It is not clear to this court—and the issue was not addressed in the briefs—that the same transaction or occurrence test is met here.

**8.** Other counts of the counterclaim (*e.g.*, breach of easement and unjust enrichment) plainly involve pre-petition claims.

**9.** To the extent that *In re Florida Hotel Properties Ltd. Partnership*, 163 B.R. 757 (W.D.N.C.1994), suggests a contrary result, we respectfully decline to follow it. Moreover, *Florida Hotel* may be readily distinguished insofar as the post-petition claims at issue there involved claims for professional expenses (fees for accounting services rendered on behalf of the estate) which the court determined were not "claims" of the sort "contemplated by the Code which are sufficient to invoke the equitable jurisdiction over a claimant." *Id.* at 759.

jury trial. Accordingly, defendants' motion for withdrawal of reference of the adversary proceeding is denied.[10]

In the alternative, defendants have asked this court to rule that the adversary proceeding is a non-core proceeding and that consequently, the bankruptcy court may not make any final determinations but rather may only issue proposed findings of fact and conclusions of law. Because we find that the adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O), defendants' alternative motion is denied.

Our reasoning on this issue parallels the reasoning of the bankruptcy judge and therefore we shall not engage in an extensive discussion of the issue because it would be wholly duplicative.

Briefly, however, the court finds that because the defendants' counterclaims now stand as proof of claims in the bankruptcy court, the counterclaims constitute core proceedings under section 157(b)(2)(B) because they ultimately involve the allowance and disallowance of claims against the estate. This is true of both the pre-petition counterclaims and the post-petition counterclaims.

With respect to the debtor's adversary complaint, the court finds that both counts constitute core proceedings under sections 157(b)(2)(A) and (O). The declaratory judgment count of the complaint seeks to establish the validity of the debtor's interest in property of the estate. The court finds this virtually indistinguishable from actions brought by debtors to determine "the validity, extent, or priority of liens" which are unequivocally core proceedings under section 157(b)(2)(K). Additionally, the court can find no basis in law or logic for distinguishing the instant action for declaratory relief from that in *Home Ins. Co. v. Cooper & Cooper, Ltd.,* 889 F.2d 746 (7th Cir.1989), wherein an insurer who had issued a policy to the debtor sought declaratory judgment that the policy was invalid. Finding that the proceeding

was "core," the court remarked, "A policy of insurance is an asset of the estate, and a request to determine its validity with respect to the debtor is a 'core' proceeding over which a bankruptcy judge jurisdiction." *Id.* at 748. Similarly, the access road that is the subject of the parties' easement dispute is an asset of the debtor's in the instant action, and a proceeding to determine the validity of the debtor's property interest in the road should also be deemed core. We find that the determination as to the debtor's interest in the property both affects the liquidation of the assets of the estate, 28 U.S.C. § 157(b)(2)(O), and concerns the administration of the estate, 28 U.S.C. § 157(b)(2)(A). This is particularly true in the instant case where the debtor's real property is the only significant asset of the estate and the debtor's title to the property must be unencumbered (or at least clearly defined) in order to effectuate its sale as part of the liquidation of the estate.[11] Our analysis is essentially the same with respect to the adversary complaint's count for injunctive relief. It is plain that the debtor's ability to establish that its interest in its real property is unencumbered—and to do so through injunctive relief, if necessary—is essential to the liquidation and administration of the estate. Accordingly, we similarly find count I of the adversary complaint to be core pursuant to sections 157(b)(2)(A) and (O).

For the foregoing reasons defendants' motion for a ruling that the adversary proceeding is non-core is denied in its entirety.

In view of the court's holdings denying defendants' motion to withdraw the reference and denying defendants' alternate motion to rule that the adversary proceeding is non-core, we do not believe that any of the other issues raised by defendants are properly before the court. To the extent that defendants disagree with any of the bankruptcy court's determinations as to jurisdiction, venue, and abstention, we believe that the prop-

---

10. Defendants' motion for withdrawal of reference was predicated on two grounds: (1) right to a jury trial and (2) need to join the prospective buyer. Because the court deems the latter ground moot, resolution of defendants' motion rests entirely on the jury trial argument.

11. Significantly, we find the instant case to be quite distinct from actions brought by a trustee to recover damages in an effort to augment the estate—which are non-core. The instant case involves an effort to define the extent of the estate.

er course is to file an appeal of those decisions rather than to ask this court to rule on those issues in the context of a motion to withdraw the reference. Accordingly, to the extent that defendants request any relief beyond that specifically addressed in this opinion, the request is denied.

### CONCLUSION

Harry Granader, Alan Granader, and Daniel Granader's motion for withdrawal of reference [1–1] is denied in its entirety.