### In re MINDECO CORPORATION, Debtor.

### Allan B. MENDELSOHN, Trustee for the Estate of Mindeco Corporation, Plaintiff,

### v.

### Stanley LISSAUER, Defendant.

### No. CV 97–0675(ADS).

United States District Court,
E.D. New York.

Sept. 12, 1997.

the judicial process, or where the interest of justice requires. 11 U.S.C. § 105(a); Fed. R. Bankr.P. 9011(a); *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877–78, 49 L.Ed.2d 826 (1976); *In re Griffiths*, 413 U.S. 717, 727, 93 S.Ct. 2851, 2857–58, 37 L.Ed.2d 910 (1973); *Ciba–Geigy Corporation v. Sidamon–Eristoff*, 3 F.3d 40, 45 (2d Cir.1993); *Schaafsma v. Morin Vermont Corp.*, 802 F.2d 629, 635–36 (2d Cir. 1986); *Sheffield Commercial Corporation v. Clemente*, 792 F.2d 282, 286 (2d Cir.1986); *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir.1972); *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equip. Corp., Inc.*, 357 F.Supp. 905, 908 (W.D.Pa.1973).

Pryor & Mandelup L.L.P., by Randolph E. White, of counsel, Westbury, NY, for Trustee.

Whitman Breed Abbott & Morgan, by Hollace Cohen, of counsel, New York City, for Stanley Lissauer.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This bankruptcy appeal arises from the claims of the Trustee-plaintiff, Allan B. Mendelsohn (the "Trustee" or the "plaintiff"), against the defendant, Stanley Lissauer ("Lissauer" or the "defendant"): (1) to avoid a lien interest held by the defendant in certain collateral; or (2) in the alternative, to equitably subordinate the defendant's secured interest in this collateral to all general unsecured claims; and for an order that this subordinated claim be transferred to the bankruptcy estate. The defendant makes counterclaims for release of funds held in an escrow account which are proceeds of the aforementioned collateral, and to which the defendant claims to be entitled; and a declaration of his rights with respect to the collateral. Presently before the Court is Lissauer's motion to withdraw the reference of this adversary proceeding to the district court based upon the jury demand contained in his answer.

### I. *Background*

The debtor, Mindeco Corporation (the "Debtor") was a distributor of marine pipe valves, fittings and flanges. On October 1, 1990, the defendant purportedly obtained a first priority security interest in the Debtor's inventory and the proceeds thereof (the "collateral") in connection with the sale of his ownership interest in: (1) 50 percent of the issued and outstanding shares of the Debtor; (2) 50 percent of the issued and outstanding shares of an affiliated entity, Nucraloy Corporation; and (3) 50 percent of the issued and outstanding shares of a second affiliated entity, Orbit Flange Corporation. The Trustee alleges, upon information and belief, that just prior to the sale, Lissauer was an officer of the Debtor.

The sale took the form of a stock transfer made to Robert Kaplan and Donald Kaplan, the owners of the Debtor's remaining shares, who in turn transferred two promissory notes to the defendant in the amounts of $1,426,750 and $398,250. In conjunction with the sale, Lissauer entered into a non-compe-

tition agreement with the Debtor. Pursuant to the terms of this agreement, the Debtor was obligated to pay the defendant the sum of $490,000 in monthly installments of $5000 beginning on October 1, 1990 and concluding on November 1, 1998. According to the plaintiff, the sale rendered the Debtor insolvent.

The security interest described above was to secure the payments to the defendant of the sums owed under the promissory notes and non-competition agreement. UCC Financing Statements were filed in Nassau County and Norfolk, Virginia, as well as with the Secretaries of State of New York, Florida and Virginia, in an effort to perfect these security interests.

According to the complaint, on May 3, 1996, Lissauer "allegedly" notified the Debtor and the Kaplans that they had defaulted on their obligations and declared all outstanding obligations immediately due and owing. On July 8, 1996, the Debtor and the defendant entered into an escrow agreement. Pursuant to the terms of this agreement, the Debtor would place 85 percent of the gross proceeds from the sale of certain assets in escrow. Lissauer contends that these proceeds constitute part of his collateral.

On July 12, 1996, an involuntary Chapter 11 bankruptcy petition was filed against the Debtor. On September 3, 1996, this case was converted to a Chapter 7 proceeding and Allan B. Mendelsohn was appointed interim trustee. On November 26, 1996, at the first meeting of the creditors, Mendelsohn was qualified as permanent trustee.

With the filing of this adversary proceeding in the bankruptcy court by complaint dated December 12, 1996, the Trustee seeks to avoid Lissauer's interest in the Debtors' property pursuant to the New York State Debtor and Creditor Law, or in the alternative, to equitably subordinate the defendant's security interest to the general unsecured claims and then transfer that interest to the bankruptcy estate. By way of his answer, dated January 10, 1997, the defendant interposes two counterclaims for the release of the funds held in escrow pursuant to the escrow agreement between Lissauer and the Debtor, and for a declaration that Lissauer

has a valid security interest in the collateral, namely the Debtor's inventory and the proceeds therefrom. Further, the answer requests a jury trial as to all issues raised by the parties' pleadings.

By order dated January 16, 1996, the bankruptcy court directed that the parties make a motion to the district court for withdrawal of the reference with respect to this adversary proceeding for pre-trial and trial purposes. Presently before the Court is the defendant's motion for withdrawal of the reference pursuant to 28 U.S.C. § 157(d) and (e) based on the jury demand contained in his answer.

## II. *Discussion*

According to the Bankruptcy Code:

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of a proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

(e) If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

28 U.S.C. § 157(d), (e). The district court for the Eastern District of New York has not specially designated the bankruptcy court to exercise jurisdiction over a jury trial. Accordingly, the question presently before the Court is whether Lissauer's jury demand entitles him to a withdrawal of this case under section 157(d).

The Trustee opposes the motion arguing that the defendant has waived his right to a jury trial, asserting that "[t]he rights asserted by the Defendant as an alleged creditor, and the declaratory relief requested, is equitable in nature, invokes the claims adjustment process and constitutes a waiver

of Defendant's right to a jury trial." Allan B. Mendelsohn, Statement in Opposition, Feb. 18, 1997, ¶ 13. The question of waiver of a jury trial turns upon interpretation of the Supreme Court cases, *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391, (1966); *Granfinanciera S.A. v. Nordberg* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) and *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990). The Second Circuit has summarized this line of cases as follows:

> As the Supreme Court has explained, by filing a claim against the estate a creditor triggers the process of allowance and disallowance of claims, and the Debtors' preference action against the creditor becomes part of the claims-allowance process. This process is integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction, which the creditor has invoked by filing the claim, and the preference action is therefore triable only in equity.

*First Fidelity Bank, N.A. v. Hooker Investments, Inc. (In re Hooker Investments, Inc.)*, 937 F.2d 833, 838 (2d Cir.1991), citing, *Langenkamp*, 498 U.S. at 44–45, 111 S.Ct. at 331–32; *Granfinanciera*, 492 U.S. at 57–59 & n. 14, 109 S.Ct. at 2798–99 & n. 14; *see In re 20/20 Sport, Inc.*, 200 B.R. 972, 976 (Bankr. S.D.N.Y.1996). On the other hand, where no claim is filed against the estate and the action to recover a preference is essentially a legal one, a jury trial may be entirely proper. *Hooker*, 937 F.2d at 838.

The Second Circuit further analyzed this issue in *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323 (2d Cir.1993). In *Germain*, the court was confronted with postpetition state law claims that the defendant bank "used its power as the debtor's [plaintiff] primary lender to exercise control of the debtor to its detriment." In affirming the decision that the plaintiff was entitled to a jury trial, the Second Circuit found that the relevant Supreme Court cases,

> stand[ ] for the proposition that by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue *that bears directly on the allowance* of that claim—and does so not so much on a theo-

ry of waiver as on the theory that the legal issue has been converted to an issue of equity. It is reasonable that a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process, such as those involving the determination of who is a valid creditor and which creditors are senior in the creditor hierarchy. We will not presume that the same creditor or debtor has knowingly and willingly surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process.

*Germain*, 988 F.2d at 1329–30 (emphasis in original); 1 Collier on Bankruptcy at ¶ 3.08[2]. Of paramount importance is whether the claim is integrally related to the equitable reordering of the debtor-creditor and creditor-creditor relationships. *Germain*, 988 F.2d at 1329; *In re Best Products Co.*, 168 B.R. 35, 67 (Bankr.S.D.N.Y.1994).

Further, although the *Granfinanciera* and *Langenkamp* decisions addressed preference and fraudulent conveyance claims, this logic has been extended to a variety of other contexts, including the filing of counterclaims. *See Peachtree Lane Assocs., Ltd. v. Granader*, 175 B.R. 232 (N.D.Ill.1994); *Murray v. Richmond Steel & Welding Co. (In re Hudson)*, 170 B.R. 868, 874–75 (E.D.N.C.1994) (filing a counterclaim in a trustee's suit); *Rushton v. Philadelphia Forest Prods., Inc. (In re Americana Expressways)*, 161 B.R. 707, 713–14 (D.Utah 1993); *Allied Cos. v. Holly Farms Foods, Inc. (In re Allied Cos., Inc.)*, 137 B.R. 919, 924–25 (S.D.Ind.1991); *Schwinn Plan Committee v. AFS Cycle & Co. (In re Schwinn Bicycle Co.)*, 184 B.R. 945, 950–53 (Bankr.N.D.Ill.1995); *Shields v. Ciccone (In re Lloyd Securities, Inc.)*, 156 B.R. 750, 754–55 (Bankr.E.D.Pa.1993); Laura B. Bartell, *Contempt for the Bankruptcy Court—A New Look*, 1996 U. Ill. L.Rev. 1, 54 (recognizing that "courts gradually have expanded the *Granfinanciera/Langenkamp* rationale ... [and] have extrapolated from the 'voluntary' act of filing a claim in bankruptcy to find that other actions by creditors—such as seeking court approval of a postpetition transaction or, [as in this case,] filing a coun-

terclaim to the trustee's suit—and even actions by the debtor in voluntarily seeking bankruptcy protection also resulted in a relinquishment of the right to a jury trial"), citing, *In re Friedberg,* 106 B.R. 50 (Bankr. S.D.N.Y.1989), *rev'd,* 131 B.R. 6 (S.D.N.Y. 1991) (seeking court approval of a postpetition transaction); *Hudson,* 170 B.R. at 874–75 (filing a counterclaim in a trustee's suit); *Rushton,* 161 B.R. at 713–14; *In re Hallahan,* 936 F.2d 1496, 1505 (7th Cir.1991) (debtor seeking bankruptcy protection); *but see Busch–Provo, Ltd. v. Sloan (In re Larsen),* 172 B.R. 988, 993 (D.Utah 1993) (declining to equate counterclaim with filing proof of claim for purpose of determining whether right to a jury trial is waived).

■ Applying these standards, the Court denies the defendant's motion for withdrawal of this adversary proceeding. Lissauer seeks to maintain his position as a secured creditor, while the Trustee seeks to avoid his interests, or at least subordinate them to other creditors. In the Court's view, the parties' claims go to the heart of the "bankruptcy process, ... involving the determination of who is a valid creditor and which creditors are senior in the creditor hierarchy." *Germain,* 988 F.2d at 1329–30. Accordingly, the Court finds that Lissauer, by invoking the bankruptcy court's equitable jurisdiction, and asserting his counterclaims, has waived his right to a jury trial, and withdrawal of this adversary proceeding is inappropriate. As a result, the defendant's motion for "withdrawal of the reference" pursuant to 28 U.S.C. § 157(d) and (e), is denied.

### III. *Conclusion*

Having reviewed the parties' submissions, and the court file, and for the reasons set forth above, it is hereby

ORDERED, that the defendant's motion for withdrawal of the reference pursuant to 28 U.S.C. § 157(d) and (e) is denied; and it is further

ORDERED, that the Clerk of the Court is directed to close this case.

SO ORDERED.