In re C. Dean LARSEN, Debtor.

BUSCH–PROVO, LTD., a Utah limited partnership, Plaintiff,

v.

Mary Ellen SLOAN, as Trustee of the Chapter 7 Estate of C. Dean Larsen, Mary Jo Larsen, Kenneth Rushton, as Trustee of the Chapter 7 Estate of Shim Investments (Bankruptcy Case No. 91C–26778), Dycom Enterprises, Inc., a Utah corporation, and Sheryl G. Miller, Defendants.

Bankruptcy No. 87C–02615.
Adv. No. 92PC 2400.
No. 92–C–1034J.

United States District Court,
D. Utah,
Central Division.

Aug. 10, 1993.

---

**6.** It is noted that *Nobelman* contains no mention whatever of § 506(b).

Michael R. Carlston, Snow, Christensen & Martineau, Salt Lake City, UT, for Busch–Provo, Ltd.

William T. Thurman, Gregory J. Adams, McKay, Burton & Thurman, Salt Lake City, UT, for Dycom Enterprises, Inc. and Mary Jo Larsen.

Rick L. Knuth, David W. Scofield, Parsons, Davies, Kinghorn & Peters, John B. Maycock, Salt Lake City, UT, for Mary Ellen Sloan.

Kenneth A. Rushton, Lehi, UT, Stephen R. Randle, Randle Deamer Zarr & Lee P.C., Salt Lake City, UT, for Kenneth Rushton.

## MEMORANDUM OPINION AND ORDER

JENKINS, District Judge.

### I. Introduction

This adversary interpleader proceeding was commenced by a complaint filed October 7, 1992, in the United States Bankruptcy Court under Bankruptcy Rule 7022. Rule 7022 applies Rule 22 of the Federal Rules of Civil Procedure to bankruptcy adversary proceedings.[1] Plaintiff, Busch–Provo Limited Partnership ("Busch–Provo"), paid into the bankruptcy court approximately $27,000, which represents the amount due from the partnership to the holder of a 4% limited partnership interest. Busch–Provo itself has no interest in the deposited funds, except for payment of its attorney's fees and costs in connection with this interpleader action.

On December 4, 1992, Dycom Enterprises, Inc. ("Dycom") and Mary Jo Larsen ("Ms. Larsen"), collectively known as Defendants, filed a Motion to Withdraw the Reference of Adversary Proceeding. The two alternative

---

1. Rule 22 states: "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability."

bases for Defendants' motion were, first, that an interpleader action is not a "core" proceeding under 28 U.S.C. § 157(b) (1988) [2], and second, that Defendants were entitled to trial by jury. On November 24, 1992, Mary Ellen Sloan (the "Trustee"), the trustee in the underlying bankruptcy proceeding, filed a Memorandum in Opposition to Motion of Mary Jo Larsen and Dycom to Withdraw the Reference and Request for Jury Trial.

At hearing on February 19, 1993, the Court reserved ruling on Defendants' motion, and requested that the parties file additional memoranda on the question of whether the bankruptcy court has jurisdiction to hear an interpleader action at all. On February 24, 1993, Defendants filed a supplemental memorandum concerning the jurisdiction of the bankruptcy court to decide non-core proceedings. The Trustee filed a reply memorandum on March 3, 1993.

Having carefully considered the arguments and pleadings of the parties, the Court GRANTS Defendants' Motion to Withdraw the Reference.

## II. Facts

Busch–Provo interpleaded the funds in question due to conflicting demands to the funds from each of the three named Defendants: the Trustee, Ms. Larsen and Dycom. The facts upon which the conflict arise are set forth below.

On April 8, 1984, the General Partner of Busch–Provo sold an 8% interest in the Busch–Provo limited partnership to Granada, Inc., a Utah corporation. On June 25, 1984, Granada, assigned its 8% partnership interest in Busch–Provo. According to Defendants, Granada assigned the interest to C. Dean Larsen ("Mr. Larsen") and Ms. Larsen, as joint tenants, and on February 11, 1986, Mr. and Ms. Larsen entered into an

agreement whereby the Busch–Provo partnership joint tenancy interest of 8% would be severed, with each tenant retaining 4% of the partnership interest as tenants in common. According to the Trustee, Granada transferred the entire 8% interest to Mr. Larsen, individually. It is Ms. Larsen's 4% interest in the partnership that is the subject of this interpleader action.[3]

Subsequent to the alleged severance of the joint tenancy, Ms. Larsen indicated her withdrawal from the partnership and requested that her 4% interest be liquidated, and the resulting funds be distributed to her. At that time, Ms. Larsen executed a note in favor of Dycom for $10,000 to be paid from the proceeds of the liquidation of her partnership interest. Ms. Larsen pledged her interest in the funds as security for an obligation owed to Dycom. On September 24, 1992, Dycom pledged the $10,000 note and security interest to the estate of Shim Investments.

By letter dated October 2, 1992, the Trustee also demanded distribution of the funds from the liquidation of the 4% interest in Busch–Provo for the benefit of Mr. Larsen's bankruptcy estate. In support of her request, the Trustee asserts the following claims: that Mr. Larsen was the owner of the 4% interest on May 26, 1987, the date of his bankruptcy petition; that the post-petition retroactive changes made to the partnership records to substitute Ms. Larsen as the owner of the 4% interest constitute a voidable fraudulent conveyance under 11 U.S.C. § 548 (1988 & Supp. III 1991) and a voidable post-petition transfer of property under 11 U.S.C. § 549 (1988); and, that the funds derived from liquidation of the 4% partnership interest are property of the bankruptcy estate.

Faced with the conflicting claims as to who the funds belonged to, on October 7, 1992,

**2.** Section 157(b) states in part: "Bankruptcy judges may hear and determine ... all core proceedings arising under title 11 ... and may enter appropriate orders and judgments...."

**3.** On March 17, 1986, Mr. Larsen transferred 4% of the Busch–Provo partnership to Richard Miller, who in turn transferred the interest to his

wife, Sheryl G. Miller ("Ms. Miller"). On December 21, 1992, Plaintiff, the Trustee, and other parties to this interpleader proceeding stipulated that there was no real issue as to the ownership of the partnership interests held by Ms. Miller, and thereby released her from the proceeding.

Busch–Provo filed a Complaint in Interpleader in bankruptcy court pursuant to 28 U.S.C. §§ 157 and 1334(b) (1988), and Rule 404, Rules of Practice of the U.S. District Court for the District of Utah, asserting that the action arose in or was related to the chapter 7 bankruptcy case of *In re C. Dean Larsen.* Thus, the issue before the bankruptcy court is the resolution of the conflicting claims to the $27,000 paid into the bankruptcy court by Busch–Provo, representing the amount due to someone from the partnership funds.

### III. Discussion

**A. *A Jury Trial is Available for Adjudication of Legal Issues in an Equitable Interpleader Action***

 Interpleader, whether initiated under statute or by rule, is an equitable remedy, governed by equitable principles. *See United States v. Major Oil Corp.,* 583 F.2d 1152, 1157 (10th Cir.1978). Although an interpleader action is equitable in nature, the parties to such an action are entitled to a jury trial of the legal issues arising out of such action. *See United States v. McMullin,* 948 F.2d 1188, 1190 (10th Cir.1991). The burden is on the moving party to point out to the court any legal issues raised by the interpleader complaint that would give rise to the right to trial by jury.

Stripped of the procedural interpleader setting, the primary legal issue arising in this dispute is whether the transfer to Ms. Larsen, whenever made, constitutes a fraudulent conveyance. The amount sought to be recovered is a fixed sum. An "action to recover an alleged fraudulent conveyance of a determinate sum of money [would have been an action] at law in 18th–century England." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 46–47, 109 S.Ct. 2782, 2793, 106 L.Ed.2d 26 (1989). The Trustee raises other fraud and voidable transfer issues in her cross-claim as well; however, in each instance, the remedy sought is a judgment for a sum certain, a legal remedy, and requires no "relief of a kind historically available only in equity...." 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2311 (1971).

Under *Granfinanciera,* an action at law "carries with it the Seventh Amendment's guarantee of a jury trial." *Granfinanciera,* 492 U.S. at 55, 109 S.Ct. at 2797. The *Granfinanciera* Court did point out that a bankruptcy court could exercise summary jurisdiction without a jury when adjudicating an issue which " 'arises as part of the process of allowance and disallowance of claims.' " *Id.* at 58, 109 S.Ct. at 2799 (quoting *Katchen v. Landy,* 382 U.S. 323, 326, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966)). When a creditor has filed a proof of claim against the estate, a "creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990). If, thereafter, the trustee files a preference or fraudulent conveyance action against the creditor, "that action becomes part of the claims-allowance process which is triable only in equity." *Id.*

 If the Defendants had filed a proof of claim against the estate, it would appear that, under *Granfinanciera* and *Langenkamp,* this interpleader action, with the counterclaims and cross-claims of the Defendants and the Trustee, could become part of the process of determining the amount of the Defendants' allowable claims. Although the Defendants have filed no formal proof of claim, the Trustee argues that the Defendants have filed a claim against property of the estate in the form of their cross-claim against the Trustee claiming entitlement to the interpleaded funds.

The Trustee points out that legal claims to property made available to the estate through the exercise of the Trustee's avoiding powers are classified as property of the estate, although not possessory at the commencement of the bankruptcy case. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1982). The Trustee further argues that the property at issue in this case is already subject to bankruptcy court jurisdiction since the funds have been tendered

into the court as part of the interpleader action. Accordingly, the Trustee argues that the Defendants have made a claim against property of the estate just as surely as if they had filed a formal proof of claim.

There is very little case law on whether an action otherwise triable to a jury becomes part of the claims-allowance process, which is triable only in equity, upon the filing of a counterclaim, or as in this case a cross-claim, against the trustee. The United States District Court for the District of Colorado struggled with the question of a defendant's right to jury trial in an action in which the defendant had filed a counterclaim against the estate in *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 109 B.R. 968 (D.Colo. 1989), *appeal dismissed and mandamus granted*, 911 F.2d 380 (10th Cir.1990). The district court indicated that "the sole question is whether, by filing counterclaims against Kaiser as part of their answers to the adversary actions, the defendants have consented to the bankruptcy court's adjudication of these actions without a jury trial under *Katchen v. Landy*, thereby making *Granfinanciera* inapplicable." *Id.* at 975.

The district court reviewed pre-*Granfinanciera* cases which gave little practical guidance to answer the question. The court reasoned:

> With the Supreme Court's recognition of the importance of the right to a jury trial in *Granfinanciera*, perhaps the Court would now take a strict view of the circumstances under which a party will be deemed to have consented to the bankruptcy court's determination of its legal counterclaims which would otherwise carry with them the right to a jury trial, especially when the party has not acted first by filing a claim against the estate. There is little authority to support this position; yet, the cases which indicate that a party's defensive posture is irrelevant are not factually analogous and fail to analyze the issue critically.

*Id.* at 976. Nonetheless, the district court in *Kaiser* indicated that there was an "absence

of a chartable course in these troubled waters," and concluded that "[u]nder a literal reading of *Granfinanciera* and *Katchen,* however, the bankruptcy court's rulings [striking the jury demands] should be affirmed." *Id.* This Court disagrees that a literal reading of *Granfinanciera* and *Katchen* dictates that filing a counterclaim or a cross-claim against a trustee has the same effect on a party's right to a jury trial as filing a proof of claim against the estate.

On appeal in the *Kaiser* case, the Tenth Circuit dismissed the appeal, but granted the defendants' petition for writ of mandamus. The Tenth Circuit concluded that the defendants that had made timely jury demands were entitled to jury trials on the fraudulent conveyance and state law claims. *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380, 389 (10th Cir.1990). However, the determination that the defendants were entitled to a jury trial was based on the court's earlier decision in *Langenkamp* that was reversed by the United States Supreme Court. *Langenkamp v. Hackler (In re Republic Trust & Savings Co.)*, 897 F.2d 1041 (10th Cir.), *rev'd sub nom., Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990).

Unlike the defendants in *Kaiser,* the *Langenkamp* defendants had filed a proof of claim in the bankruptcy court. In *Langenkamp,* the Supreme Court did not address whether the filing of a counterclaim or cross-claim would be the equivalent of filing a proof of claim such that the action would become "part of the claims-allowance process which is triable only in equity." *Langenkamp,* 498 U.S. at 44, 111 S.Ct. at 331.

In *Bayless v. Crabtree,* 108 B.R. 299 (W.D.Okla.1989), the court concluded that the defendants in that case had no right to a jury trial because they "consented to the equitable jurisdiction of the Bankruptcy Judge by filing their counterclaims." *Id.* at 304. The *Bayless* court recognized that *Granfinanciera* established that "the fact that a proceeding is core [and the bankruptcy court therefore has jurisdiction] no longer

stands as an automatic bar to assertions of a right to trial by jury." *Id.* The *Bayless* court nonetheless concluded that consent to bankruptcy court jurisdiction ended a party's jury trial rights. *Id.* However, the key issue to determine whether a party has or does not have a right to jury trial in an action involving a bankruptcy trustee is not whether the parties consent to bankruptcy court jurisdiction, but·whether the action has become part of the claims-allowance process because parties have filed proofs of claim against the estate. *Granfinanciera*, 492 U.S. at 58, 109 S.Ct. at 2799; *Langenkamp*, 498 U.S. at 44, 111 S.Ct. at 331.

The *Bayless* court accurately indicated that, when a creditor has submitted a claim against the estate, there is no right to a jury trial to adjudicate a counterclaim brought by the trustee. 108 B.R. at 304–05. The court then concluded that a counterclaim against the estate is the equivalent of a proof of claim, and that, therefore, there is no right to jury trial in an action brought by the trustee in which the defendants file a counterclaim. *Id.* at 305.

This Court disagrees with the *Bayless* court's conclusion that the filing of a counterclaim against the estate is the equivalent of filing a proof of claim. The *Langenkamp* Court explained why the filing of a proof of claim subjects a creditor to the equity jurisdiction of the bankruptcy court for the adjudication of counterclaims filed by the trustee. "[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting [itself] to the bankruptcy court's equitable power." *Langenkamp*, 498 U.S. at 44, 111 S.Ct. at 331 (quoting *Granfinanciera*, 492 U.S. at 58–59, 109 S.Ct. at 2799). "If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity." *Id.*

On the other hand, when the trustee, or a third party, files a jury-triable action, and the defendant files an answer containing a jury demand, the defendant's right to a jury trial has accrued. If the defendant concurrently with the answer, or subsequently, files a counterclaim or cross-claim against the estate in connection with the same subject matter, the counterclaim or cross-claim becomes a part of the jury trial process. The claims-allowance process is never triggered.

An interpleader action, including cross-claims filed therein against a trustee, is not a proof of claim. The claims allowance process is not involved. The contest is over identified funds, the ownership of which are in dispute. That contest does not involve a claim for a share of estate assets.

The Defendants made timely demand for a jury trial. Their right to jury trial of the legal issues in the dispute has accrued. The Defendants are entitled to a jury trial of the legal issues.

### B. *Bankruptcy Judges Lack the Power to Conduct Jury Trials*

■ There is a split of authority on whether bankruptcy judges possess the power to conduct jury trials. *Compare In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d 1449, 1456–57 (8th Cir.1990) (bankruptcy courts lack power to conduct jury trials) *with Ben Cooper, Inc. v. Insurance Co. of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1403–04 (2nd Cir.) (bankruptcy courts have power to conduct jury trials in core proceedings), *rev'd on other grounds*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *original opinion reinstated on remand*, 924 F.2d 36, 38 (2nd Cir.), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). The *Granfinanciera* Court specifically declined to address the issue of whether bankruptcy judges have power to hold jury trials. *Granfinanciera*, 492 U.S. at 64, 109 S.Ct. at 2802.

In *Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.)*, 911 F.2d 380 (10th Cir. 1990), the Tenth Circuit resolved the issue for this Court by ruling that bankruptcy courts lack the power to conduct jury trials. *Id.* at 389–92. The *Kaiser* court concluded

that the defendants in that action were entitled to jury trials on the fraudulent conveyance and state law claims where timely jury demands were made. *Id.* at 389. Accordingly, the court remanded the matter to the district court and directed the district court to withdraw the reference and conduct a jury trial. *Id.* at 392.

This Court concludes that the same action is appropriate in this case. As the Tenth Circuit has instructed, "[w]here the seventh amendment requires a jury trial to be held in [connection with a] bankruptcy, that trial must take place in the district court...." *Id.*

### IV. Conclusion

Although an interpleader action is equitable in nature, the parties to the action are nonetheless entitled to a jury trial on legal issues arising from the action. Stripped of the unique interpleader procedural setting, this action is primarily a fraudulent conveyance action by the Trustee, seeking to recover the funds resulting from the liquidation of the 4% partnership interest in Busch–Provo. Historically, fraudulent conveyance actions, and other actions for fraud, seeking recovery of a sum certain were actions at law.

This action was commenced as a plenary action, and *not* as a summary proceeding "as part of the process of allowance and disallowance of claims." The Defendants made timely demand for a jury trial. The bankruptcy court lacks power to conduct a jury trial. Defendants' Motion to Withdraw the Reference of Adversary Proceeding is GRANTED.

IT IS SO ORDERED.