**In re SCHWINN BICYCLE CO., et al., Debtors.**

**SCHWINN PLAN COMMITTEE, Plaintiff,**

**v.**

**AFS CYCLE & CO. LTD., et al., Defendants.**

**Bankruptcy Nos. 92 B 22474–92 B 22482. Adv. No. 94 A 01618.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 3, 1995.

---

Howard Feller, Dion W. Hayes, McGuire Woods Battle & Boothe, Richmond, VA, Mark K. Thomas, Terry R. Hortwitz Kass, Katten Muchin & Zavis, Chicago, IL, for plaintiff.

Scott J. Goldstein, Spencer Fane Britt & Browne, Kansas City, MO, for defendant Betty Campbell.

## MEMORANDUM OPINION ON MOTION OF PLAINTIFF SCHWINN PLAN COMMITTEE TO STRIKE DEFENDANT BETTY CAMPBELL'S DEMAND FOR JURY TRIAL

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding was filed by the Schwinn Plan Committee ("Plaintiff" or "Committee") pursuant to the confirmed liquidating Plan of Schwinn Bicycle Company and related companies (collectively "Schwinn" or "Debtor"), under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* The instant Adversary Complaint was filed against a number of defendants, including Ms. Betty Campbell ("Defendant" or "Campbell"). The Committee alleges as to this defendant that, within 90 days prior to its filing in bankruptcy, Schwinn paid Campbell $470,000.00 to settle a civil lawsuit she filed against Schwinn pre-petition in state court in Kansas. The Committee asserts that the settlement payment was preferential, and thus recoverable, under 11 U.S.C. §§ 547 and 550.

On February 22, 1995, Campbell answered Plaintiff's Complaint, asserted a counterclaim against the Committee whereby she sought damages for Schwinn's alleged breached of their settlement agreement, and demanded jury trial on all issues for which such right is available. The Committee responded on March 17, 1995, by moving to strike her jury demand on the asserted basis that, by filing a counterclaim which seeks to recover damages from the bankruptcy estate, Campbell placed herself within this Court's equitable jurisdiction and consequently lost her right to a jury trial or either the Committee's preference claim or her counterclaim.

For reasons stated herein, the Committee's motion to strike Campbell's jury demand is by separate order granted.

## BACKGROUND

Schwinn Bicycle Company was a corporation engaged in the business of manufacturing bicycles and bicycle components. In 1987, several years prior to Schwinn's filing in bankruptcy, Betty Campbell filed suit against Schwinn in Kansas state court alleging that Schwinn's negligence caused the death of her husband. Rather than proceed to trial, Schwinn and Campbell subsequently entered into a settlement agreement. Pursuant to terms of that agreement, Schwinn paid Campbell $470,000.00 and Schwinn and Campbell executed a confidentiality agreement ("Confidentiality Agreement") under which Campbell agreed to maintain strict confidentiality concerning her husband's death, seal court files, and relinquish possession of certain pieces of evidence pertaining to the civil suit.

On October 7, 1992, Schwinn filed petitions for relief under Chapter 11 of the Bankruptcy Code. As of the date of filing, Campbell held no claim against Schwinn and thus was not listed as a creditor in Schwinn's bankruptcy schedules.

An order was entered on June 6, 1994, confirming Schwinn's liquidating Plan. The Schwinn Plan Committee was established pursuant to Article IX of the Plan to perform various tasks involving plan implementation. Pursuant to § 9.2 of the Plan and ¶ 34 of the Confirmation Order, the Committee was authorized to prosecute any proceedings which could be brought on behalf of Schwinn or Schwinn's estate and to recover any transfers to which Schwinn might be entitled under the Bankruptcy Code.

On October 3, 1994, the Committee filed the instant Adversary Complaint against 49 pre-petition creditors, including Campbell, seeking to avoid and recover various alleged preferential transfers under 11 U.S.C. §§ 547(b) and 550. The Committee alleges with respect to Campbell that Schwinn paid

her $470,000.00 within 90 days prior to its filing in bankruptcy to settle the civil suit that she had filed in Kansas state court.

On February 2, 1995, Campbell filed her Answer both denying some critical allegations in Plaintiff's Complaint and asserting a counterclaim against the estate for, *inter alia*, damages resulting from Schwinn's alleged breach of their settlement agreement. She contends that Schwinn breached the Confidentiality Agreement when the Committee made the $470,000.00 settlement payment a subject of this preference action. Campbell's Answer also contained a jury demand "on all issues triable of right by jury." She did not, however, file a corresponding motion to withdraw the reference with our local district court. She asserts that the issue of her right to trial by jury will become ripe for decision only "if and when Campbell files a motion to withdraw the reference and/or the case becomes ready for trial." Def.'s Resp. at 6.

The Committee has moved to strike Campbell's jury demand and seeks a ruling now.

### JURISDICTION

This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334(b) as a matter arising in a bankruptcy case. Venue lies under 28 U.S.C. § 1409. Thus, this matter is properly before this Court pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(F).

### DISCUSSION

In moving to strike Campbell's jury demand, the Committee asserts that, by filing a counterclaim which seeks to recover damages from the estate, she placed herself squarely within this Court's equitable jurisdiction and consequently lost her right to jury trial on either the Committee's preference claim or her counterclaim. Campbell's response is three-fold: (1) the Committee's motion to strike is procedurally improper and should therefore be denied; (2) if procedurally proper, the motion is nevertheless premature; and (3) she is entitled to a jury trial on the Committee's preference claim and her counterclaim notwithstanding her filing of a compulsory counterclaim.

### A. *Plaintiff's Motion to Strike was Procedurally Proper*

■ Fed.R.Civ.P. 12(f), as applicable here under Rule 7012(b), governs motions to strike. Rule 12(f) provides in pertinent part:

[u]pon motion made by a party before responding to a pleading ... or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed.R.Civ.P. 12(f) (1995). Campbell asserts that her jury demand does not constitute a "defense" and further argues that the Committee has not shown her demand to be "redundant, immaterial, impertinent or scandalous." However, because Campbell lost her right to jury trial on the Committee's preference claim by filing her counterclaim, *see infra*, her jury demand is immaterial. Numerous other courts have at least implicitly found motions to strike to be proper procedural vehicles by which to question the merits of a litigant's jury demand and have entered similar relief. *See, e.g., Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 250, 112 S.Ct. 1146, 1147–48, 117 L.Ed.2d 391 (1992); *Atlantic Computer Sys., Inc. v. Mut. of Omaha Ins. Co. (In re Atlantic Computer Sys., Inc.)*, 165 B.R. 781, 782 (Bankr.S.D.N.Y. 1994); *Martino v. Weisman (In re Elegant Equine, Inc.)*, 155 B.R. 189, 190 (Bankr. N.D.Ill.1993) (Ginsberg, J.); *Martinson v. Towe (In re Towe)*, 151 B.R. 262, 263 (Bankr. D.Mont.1993); *Unsecured Creditors' Committee v. Banque Paribas (In re Heartland Chems., Inc.)*, 103 B.R. 1018, 1019 (Bankr. C.D.Ill.1989); *Kraus–Thomson Org., Ltd. v. McCorhill Publishing, Inc. (In re McCorhill Publishing, Inc.)*, 90 B.R. 633, 634 (Bankr. S.D.N.Y.1988); *In re Financial Partners, Ltd.*, 1985 WL 58842 (Bankr.N.D.Ill.) (McCormick, J.) (all cases in which merits of a jury demand were considered in context of motions to strike).

### B. *Plaintiff's Motion is Timely and Ripe for Consideration*

■ Campbell further asserts, in the event the Committee's motion to strike is held to

be an appropriate procedural device by which to challenge her jury demand, that the pending motion was made prematurely. She contends that her jury demand is not ripe for adjudication essentially because she has not yet moved before the local district court to withdraw the reference and may never do so. She asserts, correctly, that the only means by which a party can currently implement a Seventh Amendment right to trial by jury in any bankruptcy proceeding is by filing a motion in district court to withdraw the reference from the bankruptcy court.[1] Campbell has failed to demonstrate, however, why this Court should refrain from considering the propriety of pleadings now before it while she ponders whether to file a motion to withdraw the reference and all the while Plaintiff is forced to prepare for trial based on pleadings burdened with an immaterial procedural request. Moreover, a consolidated trial of this and three other Adversary cases has been set for trial next month on factual issues common to the four cases and severed for that trial. Since Campbell has not sought to have the District Court withdraw the reference to the proceeding against her, this Court must pass on the jury trial issue before the start of that trial.

Campbell argues that a ruling on her jury demand at this stage is premature because "virtually all" of the courts that have considered the merits of a jury request have done so upon a defendant's motion to withdraw the reference and not upon a motion to strike. However, due to the imminence of trial on certain issues in this and other cases, a ruling now can hardly be "premature." None of the cases cited by Campbell stand for the proposition that this Court should refrain from deciding a motion to strike an immaterial issue from pleadings unless and until the issue becomes ripe for adjudication. Moreover, "virtually all" is a gross exaggeration for, as previously noted, many courts have considered the merits of a jury demand upon a motion to strike. *See, e.g., Germain,* 503 U.S. at 250, 112 S.Ct. at 1147–48; *Atlantic Computer Sys., Inc.,* 165 B.R. at 782; *Elegant Equine, Inc.,* 155 B.R. at 190; *Towe,* 151 B.R. at 263; *Heartland Chems., Inc.,* 103 B.R. at 1019; *McCorhill Publishing, Inc.,* 90 B.R. at 634; *Financial Partners, Ltd.,* 1985 WL 58842 (all being cases where merits of jury demand were determined in context of motion to strike); *see also After Six, Inc. v. Sharpe's Formal Specialists, Inc. (In re After Six, Inc.),* 179 B.R. 59, 61 (E.D.Penn. 1995) (bankruptcy court granted summary judgment on jury demand issue after motion to withdraw reference filed with local district court but before ruling entered on later motion). Campbell has failed to demonstrate that precedent compels this Court to delay further in considering the Committee's motion.

■ Campbell further argues that this Court should refrain from considering the

---

1. *See* 28 U.S.C. § 157(d); Fed.R.Bankr.P. 5011; 1 Robert E. Ginsberg & Robert D. Martin, *Bankruptcy: Text, Statutes, Rules,* § 1.03[c] at 1–77. Although Congress recently authorized bankruptcy judges to conduct jury trials if specially designated to exercise such jurisdiction by the district court and with express consent of the parties, 28 U.S.C. § 157(e) (enacted by § 112 of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, (effective Oct. 22, 1994)), this case was filed before the effective date of the 1994 Amendments. Moreover, the Northern District of Illinois has yet to designate exercise of such authority (although a rule to so provide has been published for public comment). Thus, bankruptcy litigants generally must move before the district court to withdraw the reference in order to obtain trial by jury.

As a matter of practice, bankruptcy litigants file a jury demand with the Bankruptcy Court Clerk as part of the bankruptcy proceeding, although no present Federal Rule of Bankruptcy Procedure requires or governs such procedure.

*See Matter of Grabill Corp.,* 967 F.2d 1152, 1155 (7th Cir.1992) (Posner, J., dissenting) (citation omitted); *Elegant Equine, Inc.,* 155 B.R. at 191 n. 4. This practice no doubt stems from Fed. R.Civ.P. 38(b), formerly applicable to bankruptcy proceedings per Fed.R.Bankr.P. 9015 (repealed), which instructs parties asserting their Seventh Amendment right to trial by jury in a district court proceeding to do so by filing a formal jury demand with the court within a given time frame and upon notice to other parties to the proceeding. However, Fed.R.Bankr.P. 9015 was abrogated in 1987. *Grabill Corp.,* 967 F.2d at 1155 (*citing* Advisory Committee Note to Abrogation of Fed.R.Bankr.P. 9015 (1987)); *Elegant Equine, Inc.,* 155 B.R. at 191 n. 4 (*citing* same). Rule 38(b) is otherwise inapplicable to this case as bankruptcy proceedings are governed by the Federal Rules of Bankruptcy Procedure, not the Federal Rules of Civil Procedure. *Elegant Equine, Inc.,* 155 B.R. at 191 (*citing* Advisory Committee Note to Fed.R.Bankr.P. 1001 (1987)).

merits of her jury demand at this stage in the proceedings, because a number of courts have held that, where grounds exist for withdrawal of a reference, the district court need not so withdraw until pretrial preparation and litigation have been concluded and the proceeding is ready for trial by jury. *See, e.g., Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 763–64 (S.D.N.Y. 1994); *Berger v. Watrous & Ehlers, P.C. (In re Kirk E. Douglas, Inc.)*, 170 B.R. 169, 170 (D.Colo.1994); *Barlow & Peek, Inc. v. Manke Truck Lines, Inc.*, 163 B.R. 177, 179 (D.Nev. 1993); *Allied Stores Corp. v. Federal Ins. Co. (Matter of Federated Dept. Stores, Inc.)*, 144 B.R. 993, 997 (S.D.Ohio 1992); *Colbert v. Anderson (In re Colbert)*, 117 B.R. 51, 54 (Bankr.D.Conn.1990). While such timing by any district judge makes good sense, it does not follow that this Court must or should refrain from striking Campbell's jury demand where adequate grounds do not, and will not, exist for a jury trial and certain issues are set for trial next month. Cases cited by Campbell hold only that district courts can refrain from withdrawing a bankruptcy proceeding in which a jury has been demanded and is to be afforded until the case is trial ready. Bankruptcy judges serve a role similar to that of magistrate judges in such circumstances, supervising discovery, conducting pretrial conferences, and ruling on pretrial motions. However, a motion to strike an immaterial request from initial pleadings is precisely the type of pretrial matter best resolved early in the proceedings, before litigants expend considerable time and energy on a potentially irrelevant matter.

To hold otherwise would frustrate the very purpose of Fed.R.Civ.P. 12(f), which permits and governs motions to strike in order to save parties the time, effort, and expense of preparing to litigate an issue that will not affect the outcome of the case. *See United States v. Smuggler–Durant Mining Corp.*, 823 F.Supp. 873, 875 (D.Colo.1993); *United States v. Walerko Tool and Engineering Corp.*, 784 F.Supp. 1385, 1387 (N.D.Ind.1992); 2A James W. Moore et al., *Moore's Federal Practice* ¶ 12.21 (2d ed. 1994). As discussed *infra*, the Committee has shown the jury demand contained in Campbell's Answer to be immaterial. The Committee should be spared the trouble and expense of further preparing to defend against such a meritless request.

Finally, it should be noted that, had the Committee not filed its motion to strike the jury demand when it did, it might have inadvertently waived its right to object to Campbell's jury demand at a later stage in the proceedings. At least one judge has found that a party waived her right to object to a jury demand where she did not file her motion to strike in a timely manner. *Jobin v. L.D. Arnot (In re M & L Business Mach. Co.)*, 178 B.R. 270, 272 (Bankr.D.Colo.1995). Such risk at least supports the Committee's argument that its motion was timely filed and that this matter is ripe for consideration.

### C. *Defendant Lost Her Right to Jury Trial by Filing The Counterclaim*

▮▮▮ Campbell finally argues that, notwithstanding her filing of a compulsory counterclaim, she should be entitled to a trial by jury under the Seventh Amendment of the Constitution.[2] But for her counterclaim, Campbell would have been so entitled. *See Langenkamp v. Culp*, 498 U.S. 42, 45, 111 S.Ct. 330, 331–32, 112 L.Ed.2d 343 (1990) (*per curiam*) (defendant to a preference action brought under 11 U.S.C. § 547(b) is

2. The right to trial by a jury of one's peers must be accorded either by statute or the Seventh Amendment of the Constitution. *In re McNaughton*, 171 B.R. 65 (Bankr.W.D.Mo.1994) (*citing In re Tripplett*, 115 B.R. 955, 958 (Bankr.N.D.Ill. 1990) (Wedoff, J.) (*citing Granfinanciera S.A. v. Nordberg*, 492 U.S. 33, 42 n. 3, 109 S.Ct. 2782, 2790 n. 3, 106 L.Ed.2d 26 (1989))). Campbell rests her jury demand on the Seventh Amendment alone, and not the "notoriously ambiguous" current statutory provision for jury trials in bankruptcy proceedings, 28 U.S.C. § 1411. *See Granfinanciera*, 492 U.S. at 42 n. 3, 109 S.Ct. at 2790 n. 3; *see also Grabill Corp.*, 967 F.2d at 1153–54; *N.I.S. Corp. v. Hallahan (Matter of Hallahan)*, 936 F.2d 1496, 1506–07 (7th Cir.1991). Because neither party has raised nor briefed 28 U.S.C. § 1411 as an issue in this Adversary, and because neither this Adversary nor the counterclaim pleads a wrongful death or personal injury action, this Court concerns itself only with considerations under the Seventh Amendment. *See Murray v. Richmond Steel & Welding Co. (In re Hudson)*, 170 B.R. 868, 873 (Bankr.E.D.N.C. 1994).

entitled to jury trial); *see also Granfinanciera*, 492 U.S. at 58, 109 S.Ct. at 2799 (fraudulent conveyance defendant entitled to jury trial). However, by filing her counterclaim, Campbell submitted to this Court's equitable jurisdiction and, under controlling Supreme Court precedence as interpreted recently in *Peachtree Lane Assocs., Ltd. v. Granader*, 175 B.R. 232, 235–37 (N.D.Ill.1994) (Castillo, J.), lost her entitlement to a jury trial in this preference action. This Court finds the reasoning in *Peachtree* persuasive and, for reasons stated therein, concludes that Campbell's jury demand is an immaterial request.

In *Peachtree*, a Chapter 11 debtor-in-possession brought an adversary proceeding against adjoining landowners, seeking declaratory and injunctive relief for their alleged breach of easement and unauthorized entry and trespass on debtor's land. Defendants in response filed a six-count counterclaim, seeking damages for, *inter alia*, debtor's alleged slander of title, commercial disparagement, and deceptive trade practices. Defendants included a jury demand in their answer and counterclaim and further filed a corresponding motion in district court to withdraw the reference. Subsequently, defendants moved for an enlargement of time with respect to the bar date. The bankruptcy judge in response permitted defendants' counterclaim to stand as a proof of claim against the estate in the bankruptcy proceedings. *Id.* at 234–35.

Ruling on the motion to withdraw, the district judge concluded that defendants were not entitled to a jury trial in light of the Supreme Court's decision in *Langenkamp*.

In *Langenkamp*, the Court held that, by filing a proof of claim in a bankruptcy proceeding, a creditor submits to the bankruptcy court's equitable jurisdiction and consequently loses any constitutional right he or she may have had to a jury trial. *Langenkamp*, 498 U.S. at 44–45, 111 S.Ct. at 331–32.[3] Relying extensively on its holding in *Granfinanciera*, the Supreme Court opinion reasoned that

> ... by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S. at 58–59, and n. 14, 109 S.Ct. at 2799–2800, and n. 14 (*citing Katchen [v. Landy]*, supra, 382 U.S. [323] at 336, 86 S.Ct. [467] at 476, 15 L.Ed.2d 391 (Colo.1966)). If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. *Ibid.* In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. *Granfinanciera, supra*, 492 U.S. at 57–58, 109 S.Ct. at 2798–2799. As such, there is no Seventh Amendment right to a jury trial.

*Langenkamp*, 498 U.S. at 44–45, 111 S.Ct. at 331–32 (*quoted in Peachtree*, 175 B.R. at 235). This is because the underlying dispute becomes "part of the claims allowance process or affects the hierarchal ordering of creditors' claims." *CIS Corp.*, 172 B.R. at

**3.** The debtors in *Langenkamp* were two uninsured non-bank financial institutions that had filed petitions for relief under Chapter 11 of the Bankruptcy Code. Pre-petition, as the debtors' financial collapse loomed, holders of thrift and passbook savings certificates issued by the debtors redeemed their certificates for cash. Some holders were unable to liquidate all of their respective certificates and, upon debtors' filing, filed proofs of claim, thereby becoming creditors of the estates. Roughly one year after filing, the debtors' successor trustee brought an adversary proceeding against those holders who had redeemed their certificates within 90 days of debtors' filing to recover the monies they received upon redemption as preferential transfers. After trial, the bankruptcy judge held that monies received by the transferees did in fact constitute avoidable preferences. 498 U.S. at 43, 111 S.Ct. at 330–31. The district court affirmed. *Id.* The Tenth Circuit reversed and remanded, concluding that the transferees should have been afforded a jury trial in the preference action.

On appeal, the Supreme Court agreed with the Tenth Circuit that those transferees that had not filed claims against the debtors' estates were "undoubtedly entitled to a jury trial" on the trustee's preference action. *Id.* at 44, 111 S.Ct. at 331. However, with respect to those transferees that held unliquidated certificates and had filed proofs of claim, the Court disagreed with the Tenth Circuit and held that, by filing their proofs of claim, those transferees lost their right to a jury trial. *Id.* at 235–36.

761 n. 2 (*citing Germain v. Connecticut Nat'l Bank,* 988 F.2d 1323, 1330 (2d Cir.1993)).

Judge Castillo reasoned in *Peachtree* that the Supreme Court made it clear in *Katchen, Granfinanciera,* and now *Langenkamp,* that a creditor who files a claim in bankruptcy thereby loses his or her Seventh Amendment right to a jury trial. *Peachtree,* 175 B.R. at 236. He concluded that, by successfully moving for an extension of the bar date so that the bankruptcy judge might treat their counterclaim as a proof of claim against the estate, defendants effectively filed a claim and consequently lost their right to a jury trial. *Id.* He cautioned, however, that the court's ruling need not rest on the fact that defendants succeeded in their efforts to extend the bar date so as to encompass their counterclaims. Indeed, he cited "[s]everal well reasoned, post-*Langenkamp* opinions" that hold that the act of filing a counterclaim in an adversary proceeding instituted by a debtor-in-possession or Chapter 11 trustee qualifies as filing a "claim" thereby triggering the claims allowance process. *See Hudson,* 170 B.R. at 874; *Rushton v. Philadelphia Forest Prods., Inc. (In re Americana Expressways, Inc.),* 161 B.R. 707, 714 (D.Utah 1993); *Shields v. Ciccone (In re Lloyd Secs., Inc.),* 156 B.R. 750, 755 (Bankr. E.D.Pa.1993); *Allied Cos., Inc. v. Holly Farms Foods, Inc. (In re Allied Cos., Inc.),* 137 B.R. 919, 924 (S.D.Ind.1991); *see also M & L Business Mach. Co.,* 178 B.R. at 272 (holding *in dicta* that counterclaim must seek monetary relief to be construed as claim against estate).

In following the logic of *Peachtree* and cases cited therein, this Court respectfully disagrees with the reasoning in *Busch–Provo, Ltd. v. Sloan (In re Larsen),* 172 B.R. 988, 993 (D.Utah 1993). There, under factually similar circumstances, the court refused to equate filing a counterclaim with filing a proof of claim for purposes of determining whether a litigant is entitled to a jury trial. The distinction asserted in *Larsen* is temporal. The *Larsen* court distinguished *Langenkamp* by noting that creditors in *Langenkamp* filed their claims against the estate before the trustee filed her preference action. Interpreting certain language of *Langenkamp,*[4] the *Larsen* court held that, upon the trustee's or debtor-in-possession's filing of a jury-triable action, and the defendant's subsequent filing of an answer containing a jury demand, the defendant's right to a jury trial accrues. *Larsen,* 172 B.R. at 993. *Larsen* reasoned that, once the trustee files a jury-trial action, the defendant has a right to a jury trial. Any concurrent or subsequent counterclaim or cross-claim by the defendant was found not to divest a defendant of right to jury trial. At the early point in time, before the defendant has yet asserted a claim against the estate, the *Larsen* court contends there is no ongoing claims-allowance process triable only in equity because that process has not yet been triggered. *Id.* Rather, the defendant's counterclaim (or cross-claim), filed concurrently with or subsequently to his or her answer, becomes a part of the ongoing jury trial process. *Id.*

The distinction raised in *Larsen* misreads *Langenkamp. See Hudson,* 170 B.R. at 875; *Americana Expressways,* 161 B.R. at 712 n. 9; *Peachtree,* 175 B.R. at 236 n. 6. In *Langenkamp,* the creditors submitted to the bankruptcy court's jurisdiction with regard to the preference action, despite the fact that the preference action was not asserted as an objection to a proof of claim, but rather as an independent adversary proceeding. *Americana Expressways,* 161 B.R. at 712 n. 8. In so holding, the Supreme Court focused "not on the procedural posture in which the trustee's action was asserted, but on the creditor's submission to the bankruptcy court's equity jurisdiction. In that regard, it is the fact of the creditor's claim against the estate that is important, not the procedural posture of the trustee's action or the timing of the creditor's claim." *Americana Expressways,* 161 B.R. at 712 n. 9; *see also Peachtree,* 175 B.R. at 237 n. 6; *Hudson,* 170 B.R. at 875. Because Campbell has effectively filed a claim against

---

**4.** The *Larsen* court emphasized the court's reasoning in *Langenkamp* that "by ... a claim ... the creditor triggers the process of 'allowance and disallowance of claims.' If the creditor is met, in turn, with a preference action ... that action becomes part of the [on-going] claims-allowance process which is triable only in equity." *Larsen,* 172 B.R. at 993 (*citing Langenkamp,* 498 U.S. at 44, 111 S.Ct. at 331 (citations omitted)).

the estate to share in assets of the estate available for distribution under Debtor's confirmed liquidation Plan, her claim and the Committee's preference action became integral to the restructuring of the debtor-creditor relationship and must be addressed under this Court's equitable jurisdiction. Campbell has thus lost her Seventh Amendment right to a jury trial in this preference action.

Campbell attempts to distinguish this case from *Peachtree* and cases cited therein. She first argues that her claim is compulsory, whereas the claim in *Peachtree* was permissive. However, *Peachtree* itself concluded that whether a counterclaim is compulsory or permissive is not determinative of a right to a jury trial because the waiver rationale does not apply in the bankruptcy context:

> ... [T]he defendant did not lose its right to a jury trial by filing a counterclaim and thereby waiving the right. Instead, the defendant lost its right to a jury trial by filing a counterclaim and thereby seeking a piece of the disputed res, the debtor's estate, which was subject to the bankruptcy court's equitable power to allow and disallow claims. Regardless of whether the counterclaim was permissive or compulsory, it represented the defendant's attempt to obtain a portion of the debtor's estate.

*Id.* at 237 (*quoting Hudson,* 170 B.R. at 875; *see also Allied Cos.,* 137 B.R. at 924–25) (the mandatory nature of a counterclaim is not dispositive of the right to a jury trial).

Campbell also attempts to distinguish the present case on the grounds that the counterclaim is a post-confirmation cause of action for breach of contract under state law. The defendants in *Peachtree* likewise attempted to distinguish their counterclaims because they were post-petition claims, and the judge there concluded that

> [r]egardless of whether the claims are pre- or post-petition, they are still claims against the debtor's estate and hence seek a piece of the res which is under the equitable jurisdiction of the bankruptcy court. It is precisely this circumstance— *viz.* seeking a piece of the bankruptcy estate—that has been determinative ... The court can find no legal significance in the

fact that the piece of the pie that defendants seek to carve out of the estate stems from post-petition conduct by the debtor.

*Id.* at 237. That rationale disposes of the attempted distinction by Campbell here. Regardless of whether the counterclaim is prepetition, post-petition, or post-confirmation, that claim has been asserted against the debtor's estate, and therefore is subject to the bankruptcy court's equitable power to allow and disallow claims.

Campbell cites to *Bowers v. McGladrey & Pullen (In re Florida Hotel Props. Ltd.),* 163 B.R. 757 (W.D.N.C.1994), as support for her pre/post-conformation distinction, but her reliance is misplaced. *Florida Hotel* involved pre-petition claims for professional expenses which the court determined were not "claims" of the sort "contemplated by the Code which are sufficient to invoke the equitable jurisdiction over a claimant." *Peachtree,* 175 B.R. at 237 n. 9 (*quoting Florida Hotel,* 163 B.R. at 759).

Finally, Campbell argues that her counterclaim is not the "traditional" type of claim or counterclaim which places the action in the realm of public rights and which implicates the bankruptcy court's equitable jurisdiction. She contends that, because she would ordinarily be entitled to a jury trial as a matter of right on her state law breach of contract claim, her counterclaim does not involve the restructuring of debtor-creditor relations in this instance. However, as previously found, by filing a counterclaim and seeking a piece of the disputed res, here the debtor's liquidated estate, Campbell placed herself within this Court's equitable powers. Consequently, entitlement to a jury trial in either the Committee's preference action or the cause of action brought in her counterclaim has been lost.

### CONCLUSION

For reasons stated herein, Campbell lost her right to a jury trial on either the Committee's preference action or her Counterclaim. Accordingly, the Motion of Plaintiff Schwinn Plan Committee to Strike Campbell's Jury Demand is allowed.

An order which grants or denies a jury trial, by itself, is not a final order. *H.L. Blachford, Ltd. v. Bowers–Siemon Chemicals Co. (In re Bowers–Siemon Chemicals Co.)*, 123 B.R. 821, 823 (N.D.Ill.1991) (Bua, J.). Therefore, this order is appealable, if at all, only as an interlocutory order. An appeal from an interlocutory order is only taken with leave from the district court. They are taken in the same manner as are appeals to the courts of appeal. 28 U.S.C. § 158(a) and (b) and § 1292. There is no provision similar to 28 U.S.C. § 1292(b) expressly governing appeals from the bankruptcy court to the district court, but the direction in 28 U.S.C. § 158(c) that appeals shall be taken in the same manner as appeals in civil proceedings generally are taken to the court of appeals from the district court must mean that certification by the bankruptcy judge is generally required for interlocutory appeals in the same way that the district court must certify interlocutory appeals from it under § 1292(b).

This Adversary case has been consolidated for trial together with three other Adversary cases alleging preference actions against a number of defendants. The trial will be on issues that have been severed out for consolidated trial on *September 20, 21, and 22, 1995.* These common issues involved in all four cases are (1) whether the asserted transfer payments were made while the Debtor was insolvent, and (2) whether those payments enabled Campbell and other defendants to receive more than they would have received in a case under Chapter 7 of the Bankruptcy Code had the payments not been made to them. There is no reason to delay that consolidated trial, and no delay is warranted by way of appeal from this Order because of Defendant's futile jury demand. Therefore, no certificate will be granted to facilitate an interlocutory appeal.